ORIGINAL

ECF

FILED
APR 19 2005
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**NATIONAL STEEL AND SHIPBUILDING COMPANY,**
**2798 Harbor Drive,**
**San Diego, CA 92113**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

No. 05- 479C

## COMPLAINT

Plaintiff, National Steel and Shipbuilding Company ("NASSCO"), through its undersigned counsel, files this Complaint against defendant United States of America ("United States"), and states as follows:

## PARTIES

1. Plaintiff NASSCO is a wholly owned subsidiary of General Dynamics Corporation ("General Dynamics"). General Dynamics is a corporation organized under the laws of the State of Delaware, with its corporate headquarters at 2941 Fairview Park Drive, Suite 100, Falls Church, Virginia 22042-4513. NASSCO is a corporation organized under the laws of the State of Nevada, with its headquarters are located at 2798 Harbor Drive, San Diego, CA 92113.

2. NASSCO is a major ship design, construction, and repair company, among the largest shipyards in the United States. NASSCO performs contracts and subcontracts for the Department of the Navy ("Navy") and commercial customers.

3. Defendant is the United States (or "Government") acting by and through the Navy and the Naval Sea Systems Command ("NAVSEA").

## NATURE OF THIS ACTION

4. This is a suit to determine that the Incentive Price Revision clause contained in the fixed-price incentive (firm target) contract ("FPIF") with an economic price adjustment clause awarded to NASSCO in January 1987 for the design and construction of three ships requires that that total final price for those ships be calculated on an aggregate, contract-wide basis that includes the final negotiated cost of each ship. NASSCO seeks a summary determination that the final price revision for the separate FPIF contract line items be determined by aggregating the "total final cost" for those line items and comparing that total with the contract's "total target cost" in the original FPIF contract and subsequent modifications (collectively, "Contract"). NASSCO contends that the plain language of the Incentive Price Revision clause (clause H-59), the terms of Contract Modifications P0009 and P00014, and the Payments clause (clause H-24) collectively require a determination of the total final price on this basis. In a final decision rendered by the Navy's Administrative Contracting Officer, authorized by NAVSEA, the Government has taken a contrary position, in derogation of the Contract, and to NASSCO's detriment. NASSCO asserts that it is entitled to a payment of $1,218,459, plus interest, in final settlement of the subject FPIF contract.

## JURISDICTION

5. This Court has jurisdiction over the subject matter of this action pursuant to the Contract Disputes Act, as amended, 41 U.S.C. § § 601-613. The contracting officer's final decision denying NASSCO's claims was issued on April 23, 2004. After seeking to resolve the

dispute through discussion with the Navy without success, NASSCO has filed this Complaint. The Complaint is brought within 12 months of the date NASSCO received the final decision, and is therefore timely.

## STATEMENT OF FACTS

6. On January 23, 1987, NAVSEA awarded the Contract, number N00024-87-C-2002, to NASSCO to design and construct the AOE 6 Class Fast Combat Support Ship, with options to order three additional ships to be exercised in fiscal years 1989, 1990 and 1991. The option ships are essentially the same design as the AOE 6, but are designated as AOE 7, AOE 8, and AOE 9, respectively. The Contract, as awarded, contains Contract Line Item Numbers ("CLINs"). CLIN 0001 calls for the design and construction of one AOE 6 Class ship. Separate CLINs 0012, 0013, and 0014 were included as options in the basic contract for each additional ship — the AOE 7, AOE 8 and AOE 9. These CLINs are also of the FPIF type. The remaining CLINs are a mixture of firm-fixed-price ("FFP"), cost-plus-fixed-fee ("CPFF"), or not separately priced ("NSP") items. Certain CLINs refer to the original ship and the option ships in the aggregate. For example, CLIN 0002 provides data for all four possible ships, and CLIN 0003 provides on-board spares and repair parts, equipage, special tools, support and test equipment for all four possible ships.

7. The Government exercised its options for NASSCO to build two additional ships. The Government elected not to exercise the last option. NAVSEA exercised its first option to award the second ship, AOE 7, through Contract Modification 0009 on November 3, 1988, and exercised its second option to award the third ship, AOE 8, through Contract Modification P00014 on December 6, 1989.

8. NASSCO successfully performed under the Contract, and all three ships were delivered to and accepted by NAVSEA.

9. By regulation, an FPIF contract is not structured to contain a fixed final contract price. *See* Federal Acquisition Regulation ("FAR") 16.403-1. Rather, an FPIF contract "provides for adjusting profit and establishing the final contract price by a formula based on the relationship of final negotiated cost to total target cost." FAR 16.204. The FAR contemplates that the contractor and government negotiate a target cost, target profit, price ceiling and a profit adjustment formula at the outset of the contract. *See* FAR 16.403-1.

10. Once a contractor completes performance, the regulations provide for adding up the total costs of performing under the contract. The parties then may negotiate regarding these included performance costs. Once they agree on a total final cost to the contractor, they apply the profit adjustment formula to arrive at the total final price. *See* FAR 16.403-1. The FAR anticipates that, under an FPIF contract, the contractor's final profit (or net loss) will vary depending on the total cost of performance of the contract.

11. The Contract at issue, an FPIF contract, does not contain a final fixed price; it specifies a target cost, a target profit, a target price, a ceiling price, and a profit adjustment formula for the vessels to be designed and built. The total final price is calculated based on applying the profit adjustment formula to the actual costs of performance.

12. In this case, Section B, Supplies/Services and Prices, of the proposed contract included in the NAVSEA request for proposals ("RFP"), established: (i) the percentage for determining the ceiling price from the contractor's target cost; and (ii) the cost share ratio. Section B of the RFP provided blanks for each CLIN for entering proposed target cost, profit and

price. NASSCO completed all Section B pricing blanks and submitted Section B to the Navy in response to the RFP; that submission became Section B of the Contract when it was awarded.

13. The Contract included sets of CPFF, FFP and NSP CLINs associated with each of the four possible FPIF ships in the aggregate. Those CLINs were for spares, interim systems spares, technical manuals, course development, crew training, training devices, special studies, data, post-delivery availability support, testing/training devices and maintenance of those devices. The Contract also included CPFF and FFP CLINs that were not associated with any individual ship. Those CLINs were for data rights, computer compatibility, and contractor technical information codes. These individual CLINs' costs are to be combined with the FPIF CLINs plus the escalation on costs incurred to arrive at a single total final price for the entire Contract.

14. The terms of the Contract demonstrate aggregate final price rendition was contemplated. Section H of the Contract refers to the aggregate nature of the FPIF pricing. Clause H-60, "Compensation," and Clause H-59, "Incentive Price Revision (Firm Target)," refer to the "total final price" of items and the "total ceiling price," and "total final negotiated cost." Clause H-59 of the Contract, "Incentive Price Revision (Firm Target)" states that the Contractor and Contracting Officer "shall promptly establish the total final price." In order to arrive at the total final price, the Contractor and the Government are to negotiate a "total final cost" which "*shall include costs incurred or to be incurred for all supplies delivered (or services performed) and accepted by the Government...*" (emphasis added). Clause H-60, "Compensation" reiterates that "The total compensation to be paid the Contractor shall be the sum of the *total final price established* in accordance the "Incentive Price Revision (Firm Target)" clause and the amounts payable to or due from the Contractor pursuant to the contract provisions…" (emphasis added).

15. Further, the aggregate pricing language appears in Clause H-13, "Final Settlement." The Contract provides in pertinent part, "Upon final acceptance of the vessel(s),... the Contractor shall be entitled to receive the balance owing to it under this contract, such payment to be made promptly after the amount of such balance shall have been determined."

16. Clause H-24, "Payments," also takes an aggregate pricing approach. The clause states at paragraph (b)(1), "until the establishment of the total final price... the term 'total contract price' means the billing price" which initially is the "initial total contract target price" until the actual costs ("the sum of a projected final cost, and a projected profit") can be computed. Clause H-24, paragraph (b)(2)(ii)(A) expressly states that the projected final cost is "the *cumulative sum of the base costs* as of the end of the calendar quarter" (emphasis added) divided by the certified percentage of physical progress approved. The Government expressly used the term "total" to refer to the aggregate costs of all of the vessels to compute NASSCO's contract price.

17. The Contract modifications issued by the Government to exercise its options for two additional ships also support the contemplation of aggregate contract pricing. The Contract had a single price redetermination clause; each modification states that it is to "increase the Target Cost, Target Profit, Target Price, and Ceiling Price *of the Contract* as a result of this [option] exercise" (emphasis added).

18. In contrast to the aggregate final price redetermination mechanism under the Contract, the Contract elsewhere requires interim and progress billing on an individual, ship-by-ship basis. Where the Government did not intend a price to be determined using an aggregate contract pricing computation, the Contract is explicit. Clause H-24, "Payments" uses the word "vessel" at paragraph (a) when it requires the Government to make progress payments to the

Contractor "Until such time as physical progress in the performance of work on a vessel is twenty-five (25% complete)…" After this 25% progress milestone on a vessel has been reached, the Contractor is paid based on the "total contract price" of each vessel and must furnish data "on actual cumulative costs and estimated future costs acceptable to the Contracting Officer." For progress payment purposes, the Contract establishes a pricing computation of the allocated contract price of each vessel.

19. This express individual "vessel" language does not appear in Clause H-59, "Incentive Price Revision (Firm Target)," the clause determining the total final price under the Contract. Because the Navy expressly identified vessel-by-vessel pricing as appropriate in the Contract and omitted it from the final billing mechanism, the omission of a vessel-specific final price redetermination process is deliberate. As a further example of this deliberate omission of vessel-specific final price redetermination language, Clause H-59 did not incorporate either the language or the intent of FAR 52.216-16, Alternate I, paragraph (o), Provisioning and options, which specifically addresses the issue of pricing supplies or services separately. Had the Government intended to specify pricing on a vessel-by-vessel basis, the inclusion of this standard alternate FAR clause would have unambiguously stated such intention.

20. After completion of its Contract performance, NASSCO, on July 28, 2003, submitted to the Government an invoice calculated on an aggregate pricing basis for final payment under the Contract. NASSCO received no response or payment from the Government. When NASSCO did not receive a response in reasonable time, it submitted a certified claim to the Government on December 19, 2003, for the sum of $1,218,459, plus interest, in final settlement of the Contract.

21. On April 23, 2004, the Administrative Contracting Officer, as authorized by NAVSEA, issued a final decision denying NASSCO's claim on the ground that the Contract did not permit costs incurred in excess of the ceiling price for each individual ship to be reimbursed from funds not specifically appropriated for each ship. The final decision is erroneous as a matter of fact and law. The final decision wrongly contends that the final contract price is to be calculated by determining a separate final price for each ship, and then summing the prices for each vessel, thus in effect requiring three separate final prices. The Government's interpretation directly conflicts with the Contract's price redetermination provision, Clause H-59, which requires that the final price determination be based on the total cost for all items identified in Sections B and C of the Contract, provided that the total final price of the items does not exceed the total ceiling price set forth in Section B of the Contract.

22. The final decision erroneously concludes that the terms "total," "cost," and "price" do not refer to the aggregate total ceiling price because the CLINs are set forth with separate ceiling prices in Section B, even though some of the CLINs refer to items for all of the four possible ships collectively, and other CLINs do not refer to any particular or individual ship. The decision erroneously concludes that there is "no ambiguity in the language of Clause H-59," and improperly denies NASSCO's claim for payment of $1,218,459 in its entirety.

**COUNT I**
**THE GOVERNMENT'S BREACH OF CONTRACT**

23. Paragraphs 1-20 are hereby incorporated and realleged by reference.

24. NASSCO's Contract with the Government constitutes a valid and binding agreement. The Contract language repeatedly and specifically refers to total aggregate pricing of all CLINs for purposes of the final price redetermination. The Incentive Price Revision clause

(clause H-59), the terms of Contract Modifications P0009 and P00014, and the Payments clause (clause H-24) collectively require a determination of the total final price on an aggregate, Contract-wide basis for all FPIF CLINs.

25. To the extent there is any ambiguity in the Contract language, any ambiguity in the Contract wording must be construed against the Contract drafter, the Government in the instant case, in favor of NASSCO.

26. After NASSCO successfully performed under the Contract, the Government was obligated to render final payment to NASSCO, and has failed to do so, thus breaching the Contract.

27. Because of the Government's breach, NASSCO will be deprived of $1,218,459, plus interest, of otherwise allowable and allocable costs under the Contract, and has been damaged in that amount.

## COUNT II
## THE GOVERNMENT'S UNJUST ENRICHMENT

28. Paragraphs 1-20 are hereby incorporated and realleged by reference.

29. Final acceptance of the AOE 6, AOE 7 and AOE 8 vessels occurred on June 8, 2000. The Government has therefore accepted and retained these vessels and failed to pay NASSCO otherwise allowable and allocable costs under the Contract. The Government, therefore, has been unjustly enriched in the amount of $1,218,459, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, NASSCO respectfully requests that the Court enter judgment in its favor and against defendant granting the following relief:

(a) damages for breach of contract in the amount of $1,218,459, or such other amount as may be determined at trial;

(b) applicable interest under the Contract Disputes Act of 1978, as amended;

(c) such costs, expenses, and attorneys' fees as are available under applicable law; and

(d) any such other relief as the court may deem just and proper.

Date: April 19, 2005

Respectfully submitted,

David A. Churchill
JENNER & BLOCK LLP
Suite 1200
601 Thirteenth Street, NW
Washington, D.C. 20005
(202) 639-6000
(202) 637-6370 (fax)

Of Counsel:

Edward Jackson
Heather M. Trew
JENNER & BLOCK LLP
Suite 1200
601 Thirteenth Street, NW
Washington, D.C. 20005

Lane L. McVey
Vice President, Business Affairs and Law
NATIONAL STEEL AND
SHIPBUILDING COMPANY
2798 East Harbor Drive
San Diego, CA 92113